UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| UNITED STATES ex. rel. JOHN DOE, Relator, <br><br> Plaintiff, <br><br> v. <br><br> CREDIT SUISSE AG, <br><br> Defendant. | Civil Action No. <br><br> **FILED UNDER SEAL** <br><br> **JURY TRIAL DEMANDED** |

**QUI TAM COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

Plaintiff John Doe, an individual whistleblower (hereinafter "Plaintiff"), brings this civil action against Credit Suisse AG on behalf of the United States of America under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, in a qui tam capacity and as a relator for the United States, and alleges as follows:

1. **INTRODUCTION**

    1. This is an action to recover damages on behalf of the United States of America arising from knowingly false and misleading statements and material omissions made by Defendant, Credit Suisse AG, to the United States government and this Court in violation of the False Claims Act.

    2. Defendant Credit Suisse AG conspired to knowingly conceal and knowingly and improperly decrease its obligation to pay a statutory fine of $2,666,000,000 for which it was liable to the United States under U.S.S.G. §§ 8C2.7(a), (b) and 18 U.S.C. §§ 3571(c) and (d). *See* 31 U.S.C. § 3729(a)(1)(G).

1

3. On May 19, 2014, Credit Suisse AG pled guilty to conspiring with U.S. customers to conceal their Swiss bank accounts and related income with the intent to defraud the United States. The plea agreement—a contract between Credit Suisse AG and the United States—specified the maximum statutory fine due and owing by Credit Suisse AG.

4. Defendant Credit Suisse AG knowingly, intentionally, and repeatedly made misrepresentations and material omissions to the United States Department of Justice (DOJ) and this Court that: as of 2013, it had withdrawn from the conspiracy to which it pled; it had identified all of its U.S. customers; and it had ceased all of its misconduct relating to U.S. customers with whom it had conspired to defraud the United States. But, in truth and in fact, Credit Suisse AG continued participating in the same conspiracy to defraud the United States with its U.S. customers—including one U.S. customer who continued to maintain $200,000,000 in accounts at Credit Suisse in Zurich in the name of sham nominees.

5. As a result of Credit Suisse AG's knowing and intentional misrepresentations and material omissions to DOJ and this Court, Credit Suisse AG has failed to pay at least $1,332,500,000, due and owing to the United States.

2. **PARTIES**

6. Plaintiff is a former Credit Suisse AG banker who worked at the Israel desk in Zurich and whose identity is known to the United States. As a result of Plaintiff's disclosures to the United States regarding Credit Suisse AG's misconduct, Plaintiff would be prosecuted under Swiss Bank Secrecy laws and the Swiss Penal Code if his identity was made public.

7. Defendant, Credit Suisse AG, is a corporation organized under the laws of Switzerland. Credit Suisse AG, its parent, and Switzerland-based subsidiaries and affiliates,

collectively are referred to as "Credit Suisse." In the United States, Credit Suisse operates as a Financial Holding Company regulated by the Federal Reserve.

### 3. JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 3729, and 3730(e).

9. Personal jurisdiction and venue are proper in this district pursuant to 28 U.S.C. § 1391(b), § 1395(a), and 31 U.S.C. § 3732(a) because Credit Suisse made the misrepresentations and material omissions at issue in this district.

### 4. APPLICABLE LAW

10. The False Claims Act provides, in pertinent part, that any person who knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property, or conspires to do the same, is liable to the United States for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus three times the amount of damages which the United States sustains because of the act of that person. *See* 31 U.S.C. § 3729(a)(1)(G).

11. 31 U.S.C. § 3730 provides for civil actions by private persons—qui tam plaintiffs—relating to violations of § 3729.

### 5. ALLEGATIONS

#### a. DOJ investigates Credit Suisse and Credit Suisse pleads guilty.

12. In 2011, DOJ indicted eight Credit Suisse bankers, including a former senior executive and head of its North American offshore banking division, for conspiring to defraud the

United States by helping U.S. customers conceal Swiss bank accounts and related income. Four of those Credit Suisse bankers have pled guilty and the others remain at large.

13. On May 19, 2014, Credit Suisse itself also pled guilty to conspiracy to defraud United States pursuant to a written plea agreement. That plea agreement—a binding contract between Credit Suisse and the United States—recognized that Credit Suisse was liable for a statutory fine of $1,333,000,000 to $2,666,000,000 pursuant to U.S.S.G. §§ 8C2.7(a) and (b) and 18 U.S.C. §§ 3571(c) and (d). Therefore, as a result of Credit Suisse's misrepresentations and material omissions, the United States was defrauded of at least $1,332,500,000.

14. To obtain these concessions and reduce its financial obligation to the United States, Credit Suisse engaged in a scheme to conceal its full criminal conduct from the United States and this Court, by falsely representing that it had ceased participating in the ongoing conspiracy to which it pled.

15. Specifically, Credit Suisse made or caused to be made the following material misrepresentations: (1) by 2013, Credit Suisse had identified all of its U.S. customers and the U.S. customers who remained at Credit Suisse were fully compliant with U.S. tax and reporting requirements; (2) Credit Suisse had identified and corrected all of the "egregious" misconduct relating to its U.S. customers; and (3) Credit Suisse had withdrawn from the conspiracy to which it pled and stopped helping its U.S. customers avoid their U.S. tax obligations.

16. Credit Suisse made these material misrepresentations to the DOJ, the United States Senate Permanent Subcommittee on Investigations of the Committee on Homeland Security and Government Affairs ("the Senate Subcommittee"), and to this Court.

17. Based on Credit Suisse's misrepresentations and material omissions, DOJ agreed to, and this Court approved, a reduced statutory fine of $1,333,500,000 which was $1,332,500,000

4

less than the maximum statutory fine of $2,666,000,000. Therefore, as a result of Credit Suisse's misrepresentations and material omissions relating to its criminal conduct, the United States was defrauded of a financial obligation of at least $1,332,500,000.

18. On November 21, 2014, this Court sentenced Credit Suisse. Prior to sentencing, the Court asked Credit Suisse the following: "do you have any matters or anything you want to bring to the Court's attention before I go further?" Credit Suisse's attorneys stated: "We don't have anything to add".

19. The Court recognized that the proposed $1,333,500,000 statutory fine reflected in the plea agreement was intended to deter future misconduct by Credit Suisse and other foreign financial institutions. Before accepting the plea and imposing its sentence, the Court stated: "So I have looked at that from the standpoint of the law, and the seriousness of this offense, to render just and proper punishment, to show respect for the law, and to afford deterrence. I think that's a very important factor here, to afford deterrence not only to the individual defendant before the Court, Credit Suisse, but also to afford deterrence for other similarly situated entities to engage in this type of conduct."

20. Upon information and belief, DOJ has not held Credit Suisse in breach of the May 19, 2014, plea agreement, collected the full amount of the fine due and owing to the United States, or notified this Court of Credit Suisse's continued participation in a conspiracy to defraud the United States.

### b. Plaintiff came forward with credible and verified evidence that Credit Suisse continued to participate in an ongoing conspiracy with its U.S. customers

21. On July 14, 2014, Plaintiff came forward and provided information to DOJ that, contrary to Credit Suisse's representations, Credit Suisse had not withdrawn from the conspiracy to defraud the United States in violation of 18 U.S.C. § 371 to which it pled.

5

22. On July 17, 2014, DOJ attorneys interviewed Plaintiff, who disclosed that Credit Suisse continued to conspire with U.S. customers to defraud the United States in violation of 18 U.S.C. § 371. In particular, Plaintiff identified a specific Credit Suisse customer—U.S. citizen and resident, Dan Horsky—who maintained over $200,000,000 in his accounts with Credit Suisse in Zurich and continued to conspire with Credit Suisse to conceal those accounts and related income from the United States.

23. On April 15, 2015, Mr. Horsky filed his 2014 federal tax return. That return did not include the Credit Suisse accounts and related income as required by United States law.

24. On April 23, 2015, federal agents arrived at Mr. Horsky's home and served him with a subpoena that required him to produce all records related to his foreign accounts. Mr. Horsky confirmed that he was engaged in a conspiracy with Credit Suisse to hide his offshore accounts and related income from the United States. Two weeks later, Mr. Horsky began plea negotiations. On June 8, 2015, Mr. Horsky entered into a proffer agreement with DOJ confirming that he engaged in a conspiracy with Credit Suisse.

25. On June 29, 2015, Mr. Horsky pled guilty to conspiring with Credit Suisse and others to defraud the United States and paid over $100,000,000 in taxes, interest, and penalties. As detailed in the Horsky Information, in 2012 Credit Suisse (identified in the Information as "International Bank") suggested that an unnamed individual "replace defendant Horsky as a director of several offshore nominee entities and assume[] signature authority over financial accounts held in the names of those entities at [Credit Suisse]." Later, Credit Suisse helped this sham director renounce their United States citizenship to further conceal the accounts' nexus with the United States. Mr. Horsky acknowledged that "[t]his was done with the purpose of concealing Horsky's beneficial interest in and control of those accounts" due to his status as a U.S. taxpayer.

In addition, Mr. Horsky admitted that "[w]hile Defendant [Mr. Horsky] directed the activities in his Horsky Holdings and other accounts maintained at International Bank [Credit Suisse], it was readily apparent in communications with employees of International Bank [Credit Suisse] that Defendant [Mr. Horsky] was a resident of the United States." Further, "International Bank [Credit Suisse] representatives routinely sent emails to Defendant [Mr. Horsky] recognizing that Defendant [Mr. Horsky] was residing in the United States."

26. Despite Credit Suisse's knowledge of Mr. Horsky's status as a U.S. citizen and resident, Credit Suisse continued to service Mr. Horsky's accounts and conceal his tax information from the United States through at least 2015.

27. On June 4, 2015, Plaintiff provided information to DOJ that Credit Suisse's Israel Desk in Zurich continued to conspire with U.S. customers to conceal their Swiss bank accounts and related income with the intent to defraud the United States. Plaintiff informed DOJ of the Israel Desk's practices and provided an organization chart that identified more than ten Credit Suisse employees involved in an ongoing conspiracy to defraud the United States. Plaintiff provided the names, roles, and citizenship of the responsible individuals, and information on what each individual was relaying to others about the ongoing criminal investigation into Credit Suisse.

28. On August 18, 2016, Plaintiff provided information to DOJ that Credit Suisse's Legal and Compliance staff were aware that Credit Suisse continued to conspire with U.S. customers to conceal their Swiss bank accounts and related income with the intent to defraud the United States.

29. Thereafter, Plaintiff continued to inform DOJ of key conspirators' travel. As a result, DOJ was able to interview these individuals when they traveled to the United States.

### c. The United States Senate Permanent Subcommittee on Investigations investigation of Credit Suisse

30. From 2011 through 2014, the Senate Subcommittee also investigated Credit Suisse with respect to offshore banking activity with U.S. customers.

31. The Senate Subcommittee investigation culminated with a hearing on February 26, 2014 ("the Subcommittee Hearing"), where Credit Suisse executives including Bradley Dougan (Credit Suisse's Chief Executive Officer), Romeo Cerutti (Credit Suisse's General Counsel), Hans Ulrich-Meister (Credit Suisse's Co-Head of Private Banking and Wealth Management), and Robert Shafir (Credit Suisse's Co-Head of Private Banking and Wealth Management) testified under oath.

32. During the Subcommittee Hearing, Credit Suisse executives made numerous false and misleading statements regarding Credit Suisse's compliance with United States tax laws.

33. Credit Suisse executives repeatedly stated that as a result of their "very extensive investigation across the whole bank," all Credit Suisse customers who had "any U.S. connection" had been identified and were required to demonstrate compliance to continue their relationship with Credit Suisse. Bradley Dougan, a U.S. citizen and then Credit Suisse CEO, testified under oath that:

- "If [Credit Suisse customers] ... had any U.S. connection, they were required to demonstrate their compliance with U.S. tax law if they wanted to remain clients of our Bank."

- "[O]nly those U.S. clients who established compliance with U.S. tax laws can be clients of our Bank."

- "But for me it is very clear. Swiss banks can only hold assets that U.S. clients have established are compliant with U.S. tax law."

- "We will be compliant with the law, so any of these structures or anything else would have to be completely compliant with all the U.S. tax laws. ... Going forward, certainly."

These statements were false and misleading. At the time the statements were made, Credit Suisse knew that Mr. Horsky—who Credit Suisse knew to be a U.S. citizen and the owner of accounts worth in excess of $200,000,000—and others had not demonstrated compliance with U.S. tax laws even though they remained clients of Credit Suisse.

34. Upon information and belief, Credit Suisse made the same misrepresentations to DOJ in the Eastern District of Virginia.

## COUNT I
## VIOLATION OF FALSE CLAIMS ACT
## 31 U.S.C. § 3729(a)(1)(G)

35. Plaintiff realleges Paragraphs 1 through 34 as though fully set forth herein.

36. This is a claim for treble damages under the False Claims Act, 31 U.S.C. § 3729, *et seq*.

37. Defendant Credit Suisse's false and misleading statements and material omissions to DOJ and this Court induced DOJ to enter into—and this Court to approve—the plea agreement with a statutory fine of $1,333,500,000 rather than the $2,666,000,000 or more to which the Government was otherwise entitled.

38. Defendant Credit Suisse made false statements and material omissions to the Senate Subcommittee, DOJ, and this Court in furtherance of an ongoing conspiracy with U.S. customers to conceal their Swiss bank accounts and related income with the intent to defraud the United States.

39. Defendant Credit Suisse failed to truthfully admit to the full extent of its misconduct and made false statements and material omissions in furtherance of an ongoing conspiracy with U.S. customers to conceal their Swiss bank accounts and related income with the intent to defraud the United States.

40. After entering into the plea agreement, Defendant Credit Suisse obstructed and impeded the administration of justice by continuing in an ongoing conspiracy with U.S. customers to conceal their Swiss bank accounts and related income with the intent to defraud the United States.

41. All of Defendant Credit Suisse's conduct described in this Complaint was knowing, as the term is used in the False Claims Act.

42. WHEREFORE, Plaintiffs requests the following relief:

 A. Judgment against Defendant Credit Suisse in an amount equal to three times the at least $1,332,500,000 in damages to the United States that it has sustained because of Defendant Credit Suisse's actions plus a civil penalty of $11,000.00 for each violation of the False Claims Act;

 B. 25% of the proceeds of this action if the United States elects to intervene and 30% of the proceeds of this action if the United States elects not to intervene;

 C. Plaintiff's attorneys' fees, costs, and expenses;

 D. Such other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands trial by jury for all claims for which such jury is available.

Dated: February 26, 2021

Respectfully submitted,

*/s/ Stuart A. Sears*

**STUART A. SEARS**
Virginia Bar No. 71436
Attorney for Relator/Plaintiff
Schertler Onorato Mead & Sears, LLP
New York Avenue, N.W.
Suite 500 West
Washington, DC 20001
(202) 628-4199
(202) 628-4177 (FAX)
ssears@schertlerlaw.com

**JEFFREY A. NEIMAN**
Florida Bar No. 544469
**JEFFREY E. MARCUS**
Florida Bar No. 310890
**DERICK VOLLRATH**
Florida Bar No. 126740
Attorney for Relator/Plaintiff
*(Pro hac vice forthcoming)*
MARCUS NEIMAN RASHBAUM
& PINEIRO LLP
100 Southeast Third Avenue
Suite 805
Fort Lauderdale, FL 33394
Telephone: (954) 462-1200
jneiman@mnrlawfirm.com
jmarcus@mnrlawfirm.com
dvollrath@mnrlawfirm.com