IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JOHN DOE, | ) ) ) |
| Plaintiff/Relator, | ) ) |
| v. | ) NO.: 21-cv-224-CMH-IDD ) |
| CREDIT SUISSE AG, | ) ) |
| Defendant. | ) ) |

## MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION TO DISMISS

Pursuant to the dismissal provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730(c)(2)(A), the United States of America submits this memorandum of law in support of its motion to dismiss the above-captioned *qui tam* action brought by Relator John Doe ("Relator").

### INTRODUCTION

The Relator filed a complaint under the *qui tam* provision of the FCA, 31 U.S.C. § 3730(b). The Relator alleged that Credit Suisse AG ("Credit Suisse") violated the FCA by failing to disclose certain criminal conduct to the United States, which had the effect of decreasing the criminal penalty negotiated by the Department of Justice in a May 19, 2014 plea agreement to resolve criminal charges brought by the United States against Credit Suisse in *United States v. Credit Suisse*, No. 1:14-cr-188 (E.D. Va.) ("*Credit Suisse*"). The United States seeks to dismiss this case pursuant to its authority under 31 U.S.C. § 3730(c)(2)(A) because the United States has concluded that the Relator's claims fail as a matter of law, and that continued

1

litigation by the Relator would impair ongoing activity related to Credit Suisse's obligations under the plea agreement, strain Government resources, and intrude upon the Government's privileged or protected information.

BACKGROUND

I. Related Criminal Proceedings

On May 19, 2014, Credit Suisse pleaded guilty to one count of conspiracy to commit offenses against the United States through aiding, assisting, procuring, counseling, and advising the preparation and presentation of false income tax returns to the Internal Revenue Service ("IRS"). *Credit Suisse*, Dkt. Nos. 1, 13. The United States District Court for the Eastern District of Virginia entered the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

As explained in the statement of facts accompanying the plea agreement, for several decades, Credit Suisse operated an illegal cross-border banking business through which it knowingly and willfully aided and assisted thousands of U.S. clients in opening and maintaining undeclared accounts and concealing offshore assets and income from the IRS. *See Credit Suisse* at Dkt. No. 14, ¶¶ 8–9. The Statement of Facts provided that an estimated 22,000 Credit Suisse accounts owned by U.S. citizens fell within the aforementioned illegal cross-border scheme. *See id.* at ¶ 11. The plea agreement required Credit Suisse to make an ongoing effort to identify, in subsequent discussions with the Government, U.S. accounts that were part of the criminal scheme. *See id.*, Dkt. No. 13, ¶ 7.B. As part of a global resolution that included the plea agreement, Credit Suisse agreed to pay $2.6 billion to federal and state agencies. The resolution included payment of over $1.8 billion in fines and restitution to the U.S. Treasury to

resolve criminal liability, and civil money penalties of $100 million to the Federal Reserve and $715 million to the New York State Department of Financial Services, respectively.[1]

II. The *Qui Tam* Complaint

    A. Procedural Posture

On February 26, 2021, the Relator filed the *qui tam* complaint under seal. Dkt. No. 1 ("Complaint"). The Government declined to intervene pursuant to § 3730(b)(4)(B) of the FCA. Dkt. No. 17.

When the Government declines to intervene in a *qui tam* case, the case is unsealed, and the relator is permitted by the statute to continue with the action on behalf of the United States. *See* 31 U.S.C. § 3730(b)(4)(B); *ACLU v. Holder*, 673 F.3d 245, 249–50 (4th Cir. 2011). The statute also permits the United States to dismiss a *qui tam* action "notwithstanding the objections of the [relator]" if the relator receives notice of the motion and an opportunity to be heard. 31 U.S.C. § 3730(c)(2)(A). Because the United States has concluded that the Relator's allegations fail to state a claim cognizable under the FCA, and that continued litigation of this action would impair ongoing activity related to Credit Suisse's obligations under the plea agreement, strain Government resources, and intrude upon the Government's privileged or protected information, the United States seeks to dismiss the *qui tam* complaint under § 3730(c)(2)(A).

---

[1] *See* Department of Justice, Office of Public Affairs, Press Release No. 14-531, May 19, 2014, available at: https://www.justice.gov/opa/pr/credit-suisse-pleads-guilty-conspiracy-aid-and-assist-us-taxpayers-filing-false-returns (last visited, Nov. 4, 2021).

B.  *Qui Tam* Complaint Allegations

The Relator is a former employee of Credit Suisse, where the Relator last worked in 2010. The Relator alleges that during plea negotiations with the Government, Credit Suisse was required, before the plea, to disclose to prosecutors a complete and accurate list of every specific account at the bank held by U.S. citizens, but that Credit Suisse knowingly failed to make those disclosures to obtain a plea agreement with more favorable monetary terms. *See* Complaint at ¶¶ 4, 15, 17. Relator further alleges that, after the plea agreement was executed by the parties and entered by the District Court, Credit Suisse willfully failed to inform prosecutors of other accounts in violation of the plea agreement's cooperation requirements. *See id.* at ¶¶ 20–22. According to the Relator's Complaint, those alleged non-disclosures decreased Credit Suisse's obligation to pay additional penalties to the United States and are therefore actionable under the FCA's reverse false claims provision, 31 U.S.C. § 3729(a)(1)(G). *Id.* at ¶¶ 35–41.

## APPLICABLE LAW

I. The Reverse False Claim Provision

The FCA's reverse false claims provision creates liability for any person who:

> knowingly makes, uses, or causes to be made or used, a false record or statement material to *an obligation* to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an *obligation to pay* or transmit money or property to the Government.

31 U.S.C. § 3729(a)(1)(G) (emphasis added). The FCA defines "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." *Id.* § 3729(b)(3). Although the obligation does

4

not need to be fixed in amount, courts have held that an unassessed potential penalty by the Government generally does not create an established duty to pay money to the United States and is, therefore, not an obligation under the reverse false claim provision. *See, e.g.*, *United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1037 (5th Cir. 2016) ("The most reasonable interpretation is that 'established' refers to whether there is *any* duty to pay, while 'fixed' refers to the *amount* of the duty.") (emphasis in original). In the enforcement context, courts have instead held that there is no obligation to pay a penalty until the Government actually assesses it. *See, e.g.*, *United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp., et al.*, 929 F.3d 721, 726 (D.C. Cir. 2019) (failure to report substantial risk information to government while participating in compliance audit program did not constitute a reverse false claim); *Hoyte v. Am. Nat'l Red Cross*, 439 F. Supp. 2d 38, 44 (D.D.C. 2006), *aff'd*, 518 F.3d 61 (D.D.C. 2008) (no obligation to pay fines for violation of Consent Decree until Government "decides to exercise its authority").

II. The Government's Right to Dismiss *Qui Tams*

The relator in an FCA action is not seeking to vindicate her or his own harm, but, rather, is pursuing the interests of the United States. *See United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 911–12 (4th Cir. 2013). As such, although the relator is permitted to pursue the claim in the event of the Government's declination, that right to proceed is not absolute. Importantly, among the rights afforded to the Government, the FCA expressly permits the United States to dismiss a *qui tam* suit:

> The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity

for a hearing on the motion.

31 U.S.C. § 3730(c)(2)(A).

III. The Legal Standard for Dismissing *Qui Tam* Complaints

This Court has held, adopting the D.C. Circuit's standard in *Swift v. United States*, 318 F.3d 250 (D.C. Cir. 2003), that the Government has an "'unfettered right'" to dismiss a *qui tam* action. *United States ex rel. Davidheiser v. Cap. Rail Constructors*, 433 F. Supp. 3d 899, 901-02 (E.D. Va. 2019) (Hilton, J.) (quoting *Swift*, 318 F.3d at 252–53); *see also United States ex rel. Henneberger v. TICOM Geomatics, Inc.*, 427 F. Supp. 3d 701, 704 (E.D. Va. 2019) (Trenga, J.) ("The claims asserted by a relator are the claims of the United States; and the Court finds itself predominantly aligned with the views of the D.C. Circuit in *Swift*.").[2]

Although the Fourth Circuit has not formally adopted the D.C. Circuit's *Swift* standard, at least two other circuits have adopted a similar standard where, as here, the dismissal was filed prior to the defendant's filing of an answer or summary judgment motion. *See, e.g.*, *United States ex rel. CMZNHCA, LLC v. UCB, Inc., et al.*, 970 F.3d 835, 838, 849 (7th Cir. 2020) (holding that, when the Government files its motion before the defendants have answered or moved for summary judgment, the Government's right to dismiss is limited only by the procedural requirements of Federal Rule of Civil Procedure 41 and "any applicable background constraints on executive conduct in general"); *see also Polansky v. Executive Health Res. Inc.*, No. 19-3810, ___ F.4d ___, 2021 WL 4999092, at *8–9 (3d Cir. Oct. 28, 2021) (same).

---

[2] The D.C. Circuit held that such a reading is consistent with Federal Rule of Civil Procedure 41(a)(1)(i), and that, as an exercise of prosecutorial discretion, the Government's decision to dismiss a *qui tam* is not reviewable by the judiciary. *Swift*, 318 F.3d at 252.

6

The Ninth Circuit has articulated a different but still highly deferential standard for dismissal, under which the Government need only identify a "valid government purpose" and a rational relationship between dismissal and the accomplishment of that purpose; at that point, "the burden switches to the relator 'to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal.'" *See United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998) (internal citation omitted).[3] The Ninth Circuit has also held that, in showing a valid Government purpose, "the government can legitimately consider the burden imposed on the taxpayers by its litigation." *Id.* at 1146. The dismissal of lawsuits that the Government reasonably concludes fail to allege cognizable FCA claims, would impair the Government's ability to work with defendants, or would intrude upon confidential and/or privileged information all qualify as valid purposes for dismissal. *See, e.g.*, *Braswell v. Unger*, No. 14-cv-02574-TUC-JAS, 2015 WL 13810123, at *4 (D. Ariz. Aug. 11, 2015) (applying *Sequoia Orange* standard and dismissing *qui tam* where "the FCA claim is not cognizable under the FCA"); *Schwartz v. Raytheon Co., Long Beach*, 150 F. App'x 627, 628 (9th Cir. 2005) (affirming dismissal of *qui tam* where relator "fail[ed] to demonstrate that the parties can litigate this case without access to privileged and sensitive material"); *United States ex rel. Toomer v. TerraPower, LLC*, No. 4:16-cv-00226-DCN, 2018 WL 4934070, at *5 (D. Idaho Oct. 10, 2018) (dismissing *qui tam* where the Government alleged that litigation would consume agency resources and impair the Government's ability to work with the defendant).

---

[3] The Tenth Circuit has also applied this standard. *See Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 936–38 (10th Cir. 2005).

ARGUMENT

Although the Government contends that, under *Swift* and this Court's precedent, it has an "unfettered right" to dismiss *qui tam* actions, the Government nevertheless offers reasons to support dismissal that satisfy any of the standards that courts have employed in considering motions under 31 U.S.C. § 3730(c)(2)(A). First, the Relator's claim is premised on the false assumption that a civil, FCA suit can be predicated on unassessed penalties or fines. As discussed below, courts have rejected such attempts by *qui tam* relators; if this case were to proceed, it would effectively authorize a private citizen to re-open and litigate the Government's May 2014 criminal plea agreement with Credit Suisse—or, for that matter, any other plea agreement. Second, because the plea agreement remains a living document (*i.e.*, one that requires continued cooperation on the part of Credit Suisse), the Relator's litigation of this FCA case would interfere with ongoing law enforcement activities related to the plea agreement. Third, continued litigation would strain the Government's resources and necessarily intrude upon internal deliberations over which the Government claims privilege or protection.

I. The *Qui Tam* Lacks Legal Merit Under the FCA

To establish a violation of the reverse false claim section of the FCA, the Relator must allege that the defendant improperly avoided an obligation to pay the Government. In other words, and as discussed above, the Relator must identify "an *established duty*" arising from a statute, regulation, contract, or other relationship to "pay or transmit money . . . to the Government." *See* 31 U.S.C. § 3729(b)(3) (emphasis added).

The Relator's argument here is based on the speculative assumption that if Credit Suisse had disclosed additional illegal accounts, federal prosecutors likely would have pursued a higher

8

negotiated criminal penalty than what is reflected in the plea agreement, or an additional penalty on top of what was already imposed by the plea agreement and paid by Credit Suisse. Regardless of whether these speculative allegations are true or false, they fail as a matter of law under the FCA, as an unassessed potential penalty does not qualify as an "established obligation" to pay that can give rise to a reverse false claim. For liability to attach, there must be an established duty to pay money and, in the enforcement context, where the Government has not, in fact, assessed penalties, there is no such duty. *See, e.g., Simoneaux*, 843 F.3d at 1040 (contrasting unassessed penalties with customs duties and noting that the "the customs law imposes a duty to *pay*") (emphasis in original); *BASF Corp.*, 929 F.3d at 726 (obligation to pay penalty "arises only if and when the [Government] decides to impose a penalty"). Credit Suisse had only an obligation to obey the law, and the Relator has identified no required obligation to pay a penalty to the Government for a violation of the law before it is imposed, much less beyond the amount negotiated with prosecutors. As such, the United States has concluded that the Relator's *qui tam* action fails to state an FCA claim on which relief can be granted, and thus warrants dismissal.[4]

---

[4] To the extent the Relator asserts that Credit Suisse violated the FCA through its complicity in tax evasion by U.S. citizens, *see* Complaint at ¶ 40, that claim must also fail because it is predicated on violations of the Internal Revenue Code (*e.g.,* unpaid taxes). Claims, records, or statements made under the Internal Revenue Code of 1986 do not qualify as false claims under the FCA. *See* 31 U.S.C. § 3729(d); *see also Canen v. Wells Fargo Bank, N.A.*, 118 F. Supp. 3d 164, 170 (D.D.C. 2015) (denying recovery under the FCA because "Plaintiffs root their FCA claims in lost 'income tax revenue'") (quotation omitted); *Ananiev v. Freitas*, 37 F. Supp. 3d 287, 307 (D.D.C.) (same), *aff'd*, 587 F. App'x 661 (D.C. Cir. 2014). Moreover, to the extent Relator alleges that Credit Suisse's restitution to the IRS would have been higher had it disclosed accounts that it failed to disclose, and the restitution is the unpaid taxes corresponding to the undisclosed accounts, Relator is effectively trying to shoehorn a tax claim into the FCA.

II.       Continued Litigation of the *Qui Tam* Will Interfere with Ongoing Law Enforcement Activities

Permitting the Relator to effectively re-open and litigate the merits of the plea would also have grave implications for this and future cases, because it would essentially give a private citizen, who is not a victim of the criminal conduct, the ability to use the FCA to challenge the propriety of any criminal plea agreement. Private citizens ordinarily lack any judicially cognizable interest in the prosecution or non-prosecution of another. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *United States v. Wegeler*, 941 F.3d 665, 672-74 (3d Cir. 2019) (concluding that FCA Relator lacked standing to intervene in criminal action in order to challenge propriety of restitution order); *cf. In re Wild*, 994 F.3d 1244, 1269 (11th Cir. 2021) (*en banc*) (holding that crime victims are not entitled to a role in the Department of Justice's charging deliberations and decision-making process). This is for good reason, as, even setting aside constitutional limitations, a private citizen's speculative contentions (like the Relator's here) about the propriety of a criminal resolution cannot possibly take into account the myriad of factors that the Government considers in reaching a criminal resolution with a defendant and a recommended plea to a federal court, and in evaluating a defendant's conduct pursuant to the terms of an ongoing agreement with the Government.

This concern is all the more acute in a case like this one, where the Relator's case threatens to interfere with ongoing discussions with Credit Suisse regarding the identification and remediation of remaining Swiss accounts held by U.S. citizens. Civil litigation by the Relator, ostensibly on behalf of the United States and in parallel with the ongoing implementation of the plea agreement, would threaten the Department of Justice's ability to

continue working with Credit Suisse in pursuit of uniquely governmental and federal interests. This is sufficient reason to dismiss. *See Toomer*, 2018 WL 4934070, at *5 (dismissing *qui tam* where the Government alleged that litigation would consume agency resources and impair its ability to work with the defendant).

III. Continued Litigation of the *Qui Tam* Will Strain Government Resources and Intrude Upon Privileged and/or Protected Information

Finally, the United States is moving to dismiss this case to protect the Government's valid interest in conserving limited resources that would be expended in litigating this action. Courts have routinely held that preservation of Government resources is a valid Government purpose for dismissing a *qui tam* action. *See, e.g.*, *Sequoia Orange*, 151 F.3d at 1146 (holding that the district court "properly noted that the government can legitimately consider the burden imposed by taxpayers by its litigation, and that, even if the relators were to litigate the FCA claims, the government would continue to incur enormous internal staff costs"); *United States ex rel. Davis v. Hennepin County*, No. 18-cv-01551 (ECT/HB), 2019 WL 608848, at *5–6 (D. Minn. Feb. 13, 2019) (adopting *Swift* with in-depth discussion); *United States ex rel. Stovall v. Webster Univ.*, No. 3:15-v-03530-DCC, 2018 WL 3756888, at *3 (D.S.C. Aug. 8, 2018) (holding that Government's "interest in preserving scarce resources by avoiding the time and expense necessary to monitor t[he] action" was a valid Government purpose for dismissal).

In this case, the prosecution of the Relator's *qui tam* action would place a significant burden on the Government—not only in monitoring of the continued litigation, but in responding to discovery requests from the Relator and Credit Suisse. Given that the Relator's allegations depend on showing that Credit Suisse misled prosecutors into recommending a lower penalty,

11

the Relator's claims will necessarily place at issue prosecutorial knowledge and decision-making.   Relator would likely seek sensitive materials regarding all aspects of the plea, including how the penalty amount was reached, and such materials contain information over which the Government maintains a claim of privilege or protection.   If this litigation proceeds, it will almost inevitably lead to further expenditure of resources by the Government to shield this privileged or protected information, and to protect ongoing investigations, if any, that may be implicated by it.

Courts have granted dismissal when such discovery burdens were evident from the nature of a relator's claims.   *See, e.g.*, *Schwartz*, 150 F. App'x at 628 (affirming dismissal of *qui tam* where the relator "fail[ed] to demonstrate that the parties can litigate this case without access to privileged and sensitive material"); *United States ex rel. Nicholson v. Spigelman*, No. 10-cv-3361, 2011 WL 2683161, at *2 (N.D. Ill. July 8, 2011) (noting that the likelihood that parties "would seek discovery from the government and the government's burden in monitoring the case and filing briefs on issues of law likely to arise in the suit" was sufficient basis to grant Government's motion to dismiss).   This case raises similar concerns.

## CONCLUSION

For any one of the foregoing reasons, the Government's motion should be granted.

Dated:   November 4, 2021

              Respectfully submitted,

              JESSICA D. ABER
              UNITED STATES ATTORNEY

        BY: */s/ William Hochul III*
              WILLIAM HOCHUL III

GERARD MENE
Counsel for the United States of America
Assistant United States Attorneys
2100 Jamieson Ave.
Alexandria, Virginia 22314
Tel:    (703) 203-7122
        (703) 299-3777
Fax:    (703) 299-3898
Email: William.Hochul2@usdoj.gov
       Gerard.Mene@usdoj.gov

JAMIE ANN YAVELBERG
ALLISON CENDALI
DAVID W. TYLER
Attorneys, Civil Division
Commercial Litigation Branch
U.S. Department of Justice
P.O. Box 261, Ben Franklin Station
Washington, D.C. 20044
Tel:    (202) 305-3988
Fax:    (202) 514-7361
Email: David.W.Tyler2@usdoj.gov