UNITED STATES ex rel. JOHN DOE,
Relator

     *Plaintiff*

vs.                                      **CASE NO. 21-CV-224**

CREDIT SUISSE AG

     *Defendant*

_____/

## RELATOR'S OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS

The Relator respectfully opposes the United States of America's Motion to Dismiss. This pending *qui tam* action concerns whether Credit Suisse and the Department of Justice ("DOJ") misled Judge Rebecca Beach Smith in 2014 into accepting a binding Rule 11(c)(1)(C) plea agreement that allowed Credit Suisse to avoid a criminal fine of over $1 billion. Both DOJ and Credit Suisse failed to inform Judge Smith both at the time of the Credit Suisse plea in May 2014 and again at sentencing in November 2014, that Credit Suisse continued to engage in the very same criminal tax conspiracy to which it pled. Moreover, based on the public record, DOJ and Credit Suisse have failed to alert Judge Smith to Credit Suisse's continued criminal activity and Credit Suisse's failure to identify all recalcitrant non-compliant U.S. related accounts.

By failing to inform Judge Smith that Credit Suisse was continuing to assist American taxpayers with concealing hundreds of millions of dollars in undeclared assets, the Government and Credit Suisse lulled Judge Smith into accepting a binding Plea Agreement that contained false statements and material omissions. That fraud caused the Government to forfeit approximately $1 billion in criminal fines that Judge Smith could have imposed based on Credit Suisse's admitted

criminal conduct. The Government's motion to dismiss does not rebut or address the underlying fraud on Judge Smith and this Court should not allow the Government to shield itself from scrutiny regarding why it withheld evidence from Judge Smith. Relator has presented a valid reverse False Claims Act ("FCA") claim relating to the avoidance of the $1 billion criminal fine and, in response to the Government's motion to dismiss, Relator is entitled to an evidentiary hearing. *See* 31 U.S.C. § 3729(a)(1)(G); 31 U.S.C. § 3730(c)(2)(A) (the Government may move to "dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion **and the court has provided the person with an opportunity for a hearing on the motion**.") (emphasis added).

The Government's other stated reasons for dismissal are pretextual. Despite boilerplate assertions in the motion to dismiss, a determination relating to Relator's FCA claim would require little if any effort by the Government and would simply require the DOJ prosecutors to comply with their ethical obligations to be truthful to Judge Smith. Conserving limited resources is not a legitimate purpose for the Government to dismiss this case where the potential recovery greatly outweighs any litigation burden to the Government and the Government has failed to substantiate its undue burden argument. Protecting privileged material is not a legitimate purpose for the Government to dismiss this case because the Relator does not need privileged material to prove its FCA case. Credit Suisse's communications with the Government and the Government's knowledge of Credit Suisse's ongoing criminal activity are simply not privileged or classified. Furthermore, contrary to the Government's assertions, Relator has pled a legally valid reverse FCA complaint.

Finally, the Government claims that this case would interfere with "ongoing discussions with Credit Suisse regarding the identification and remediation of remaining Credit Suisse

accounts held by U.S. citizens." This can be addressed. Relator offered the Government the option to keep the complaint sealed pending any "ongoing discussions" with Credit Suisse. The Government declined. Moreover, the Government has represented to attorneys for the Relator that the subject matter of this action is not part of those ongoing discussions with Credit Suisse. After the statutorily required evidentiary hearing on the motion to dismiss, the Court could stay this civil case while related enforcement actions proceed and require DOJ to provide regular *ex parte* status reports to justify the continued stay of this civil action.

For the reasons stated above, Relator respectfully requests that the Court order a hearing on the Government's motion to dismiss.

<u>**BACKGROUND**</u>[1]

### Prior to the Credit Suisse Plea, the Relator Presented Information About Dan Horsky to DOJ Prosecutors

In April 2014, Relator's attorney contacted a senior DOJ Tax Division prosecutor and a member of the Credit Suisse prosecution team, regarding an undisclosed $200 million account at Credit Suisse belonging to Dan Horsky, a U.S. citizen. During this proffer, Relator's attorney disclosed the existence of Mr. Horsky's ongoing tax conspiracy with Credit Suisse. Shortly after that initial contact, Relator provided the DOJ prosecutor with additional information relating to the Horsky account including hard evidence (a signature card and an account statement) which established that Credit Suisse was engaged in an ongoing conspiracy with Horsky despite its supposed "full cooperation" with DOJ as part of its 2014 plea.

On May 19, 2014, DOJ and Credit Suisse filed a Rule 11(c)(1)(C) plea agreement and statement of facts with Judge Smith (collectively, the "Plea Agreement"). *See* Ex. A, Plea

---

[1] The Relator incorporates by reference all of the facts described in Relator's Motion to Transfer, D.E. 25.

Agreement, ECF No. 13 at ¶ 7A, *United States v. Credit Suisse*, 14-cr-188 (E.D. Va.). The Plea Agreement falsely represented that Credit Suisse's participation in the criminal tax conspiracy ended in 2009. *See* Ex. B, Statement of Facts, ECF No. 14 at ¶ 8, *United States v. Credit Suisse*, 14-cr-18 (E.D. Va).

On July 17, 2014, the DOJ prosecutors interviewed the Relator who again provided credible, verified, evidence that the Plea Agreement contained the following false statements and material omissions: (1) by 2013, Credit Suisse had identified all of its U.S. customers and the U.S. customers who remained at Credit Suisse were fully compliant with U.S. tax and reporting requirements; (2) Credit Suisse had identified and corrected all of the "egregious" misconduct relating to its U.S. customers; and (3) Credit Suisse had withdrawn from the conspiracy to which it pled and stopped helping its U.S. customers avoid their U.S. tax obligations. Ex. C, Complaint, ECF No. 1, at ¶ 15.

On November 21, 2014, Credit Suisse and the DOJ prosecutors appeared before Judge Smith for sentencing. *See* Ex. D, Nov. 21, 2014 Tran. ("Sentencing Transcript"), ECF No. 51, *United States v. Credit Suisse*, 14-cr-188 (E.D. Va.). Neither party corrected the false statements or material omissions contained in the Plea Agreement, despite explicit questions from Judge Smith regarding whether there was any evidence or information that the court should consider prior to accepting the Plea Agreement and sentencing. Ex. D, Sentencing Transcript at p. 10:11-14 (DOJ), 10:22-24 (Credit Suisse). In contravention of their ethical obligations, the DOJ prosecutors and Credit Suisse did not inform Judge Smith of the ongoing conspiracy. *Id.* at p. 10:15-16 (DOJ attorney: "No additional statements from the Government"), p.10:25 – p. 11:2 (Credit Suisse attorney: "We don't have anything to add"). There is no allegation that DOJ and Credit Suisse colluded with respect to the false statements and material omissions made to Judge

Smith, however, both the DOJ prosecutors and Credit Suisse independently misled the Court. To this date, that fraud on the Court has not been corrected.

In 2015, the Relator provided additional information to the DOJ prosecutors regarding Credit Suisse's ongoing conspiracy, including an organizational chart that identified more than ten Credit Suisse employees that continued to engage in an ongoing conspiracy. Ex. C at ¶ 27. In 2016, the Relator provided additional evidence showing that Credit Suisse's Legal and Compliance staff were aware that Credit Suisse continued to conspire with U.S. customers to conceal their Swiss bank accounts and related income with intent to defraud the United States. *Id.* at ¶ 28.

## LEGAL STANDARD – GOVERNMENT DISMISSAL OF FCA CLAIM

Under a direct False Claims Act theory, a defendant is liable to the United States for wrongfully and fraudulently obtaining money from the Government. 31 U.S.C. § 3729(a)(1)(A)-(B). Under a reverse theory, a defendant is liable for improperly avoiding or decreasing payments that should have been made to the Government. 31 U.S.C. § 3729(a)(1)(G). The FCA authorizes private citizens to enforce its provisions. 31 U.S.C. § 3730(b). To pursue such an action, the Relator must file his complaint under seal for at least sixty days, which gives the Government an opportunity to investigate the claim and to determine whether to intervene. 31 U.S.C. § 3730(b)(2). In addition to determining whether to intervene, the Government may also "dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion **and the court has provided the person with an opportunity for a hearing on the motion**." 31 U.S.C. § 3730(c)(2)(A) (emphasis added).

## ARGUMENT

## I.   The Government Has Moved to Dismiss Based on Improper Considerations.

The Government has moved to dismiss Relator's valid FCA complaint based on improper considerations; namely, the Government wants to insulate DOJ from questions about whether DOJ

was candid with the Court at Credit Suisse's change of plea hearing and subsequent sentencing hearing. The Court should deny the Government's motion to dismiss because it is based on "fraudulent, corrupt, or improper" reasons. *United States ex rel. Davidheiser v. Capital Rail Constructors*, 433 F. Supp. 3d 899, 902 (E.D. Va. 2019); *see also United States ex rel. Stovall v. Webster Uni.*, Civil Action 15-3530, 2018 WL 8701241, at *2 (D.S.C. May 30, 2018); *United States ex rel. Sequoia v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1144-45 (9th Cir. 1998); *United States v. Academy Mortgage Corp.*, Civil Action No. 16-2120, 2018 WL 3208157, at *3 (N.D. Cal. June 29, 2018) (denying Government's motion to dismiss the *qui tam* complaint because the Relator presented evidence that Government's dismissal request was improper where Relator showed that Government had not fully investigated complaint).

Here, the Relator has established that the statements in the Plea Agreement—attested to by both Credit Suisse and the DOJ Prosecutors—were false. Credit Suisse continued to engage in the criminal conspiracy to which it pled through at least 2015. Recently, the United States Senate Committee on Finance has opened an investigation into DOJ and Credit Suisse's conduct with respect to the Plea Agreement. *See* https://www.finance.senate.gov/chairmans-news/wyden-launches-investigation-into-whether-credit-suisse-violated-plea-agreement (last accessed November 17, 2021). In addition, both Credit Suisse and the DOJ prosecutors violated their ethical obligations and made material omissions of relevant factual information (i.e., Credit Suisse's continuing criminal conduct) to Judge Smith in November 2014 *before* she accepted the Plea Agreement and determined the appropriate amount of Credit Suisse's criminal fine.

Attorneys who submit pleadings and make representations to a court are expected to be truthful. Under Rule 3.3 of the Virginia Rules of Professional Conduct (applicable under Local Criminal Rule 57.4(I)), a lawyer owes a duty of candor towards the tribunal and may not

knowingly: (1) make a false statement of fact to a tribunal; (2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting in a criminal or fraudulent act; and (3) offer evidence that the lawyer knows to be false. *See* Virginia Rules of Professional Conduct 3.3(a)-(b). In addition, a lawyer who receives information establishing that a fraud has been perpetrated upon the tribunal in a proceeding in which the lawyer is representing a client is required to "promptly reveal the fraud to the tribunal." *See* Virginia Rules of Professional Conduct 3.3(d). Those rules are specifically applicable to Government attorneys under 28 U.S.C. § 530B.

The District Court for the Eastern District of Virginia has also recognized that there are instances in which the "failure to make a disclosure is the equivalent of an affirmative misrepresentation." *See Va. Innovation Scis., Inc. v. Samsung Elecs. Co*., 983 F. Supp. 2d 713, 754-55 (E.D. Va. 2014). And there is a broader general duty of candor and good faith that encompasses an attorney's duty to advise a district court of any development that may affect the outcome of the litigation. *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457–59 (4th Cir. 1993). Furthermore, the Government has a heightened duty of candor "to furnish complete and accurate information at sentencing" so that the sentencing court can evaluate the plea agreement and accept or reject the plea in the "exercise of sound judicial discretion." *United States v Edgell*, 914 F.3d 281, 287 (4th Cir. 2019) (citation omitted). This duty exists so that "the court has complete and accurate information, enabling the court to impose an appropriate sentence." *Id.* at 287 (citing *United States v. Maldonado*, 215 F.3d 1046, 1052 (9th Cir. 2000)); *see also United States v. Block,* 660 F.2d 1086, 1092 (5th Cir. 1981) (standing "mute" in the face of "factual inaccuracies" or withholding relevant factual information "violates a prosecutor's duty to the court").

Based upon the evidence submitted with this response, DOJ and Credit Suisse have never notified the Sentencing Court as to false statements and material omissions contained in the Statement of Facts and Plea Agreement. By not correcting the false statements and material omissions prior to sentencing, both DOJ and Credit Suisse perpetrated a fraud on the Court. Relator's counsel has requested that DOJ provide information to the Relator about what occurred in 2014 and whether DOJ withheld relevant information from Judge Smith at the time of sentencing demonstrating that Credit Suisse's misconduct was ongoing. *See* Ex. E Sept. 23, 2021 Ltr. From J. Neiman to DOJ (requesting that DOJ provide Relator a written response regarding whether DOJ prosecutors failed to provide relevant evidence to Judge Smith at the time of sentencing). The Government did not respond to the letter.

The Government has also failed to fully investigate this FCA suit. In the wake of the announcement by Senate Finance that it was investigating whether Credit Suisse adhered to the obligations of the 2014 Plea Agreement, additional former Credit Suisse bankers, unrelated to Horsky, have come forward with credible information that Credit Suisse continued to assist additional Americans with concealing assets from the United States after 2014. In some instances, the concealment is ongoing today. Counsel for the United States in this case declined to interview these former Credit Suisse bankers, despite the fact that their information further corroborated that Credit Suisse has violated its Plea Agreement.[2] Failing to investigate constitutes an additional reason why this case should not be dismissed. *Academy Mortgage Corp.*, 2018 WL 3208157, at *3 (denying Government's motion to dismiss where Relator showed that Government had not fully investigated *qui tam* complaint).

---

[2] While these witnesses were not interviewed by the attorneys representing the United States in this *qui tam* case, these witnesses were interviewed by a Trial Attorney from the Department of Justice from the Tax Division and an Assistant United States Attorney assigned to criminal matters.

The Court does not need further evidence to deny the Government's motion to dismiss. However, where—as here—a Relator "presents a colorable claim that … dismissal is unreasonable in light of existing evidence … or that the Government's decision was based on arbitrary or improper considerations," the Court can permit an evidentiary hearing to further inquire about the Government's reasons for dismissal. *Sequoia*, 151 F.3d at 1145-47; *United States v. EMD Serono, Inc.*, 370 F.Supp.3d 483, 488-89 (E.D. Pa. 2019) ("Requiring a hearing assures that the decision to dismiss is not arbitrary and without a valid Governmental interest … Requiring some justification, no matter how insubstantial, for a decision not to pursue a false claim, acts as a check against the Executive from absolving a fraudster on a whim or for some illegitimate reason. It prevents the Executive from abusing power.); *Stovall*, 2018 WL 8701241, at *2 ("[U]pon a sufficient initial showing, Relator may have the opportunity to offer evidence … that [the Government's] decision to dismiss" is improper or unreasonable.).

While the Relator has presented sufficient evidence to demonstrate that dismissal is improper in this case without the need for an evidentiary hearing, the Court can order a statutorily required hearing to elicit additional evidence about the Government's reasons for dismissing this case.

## II. <u>The Government's Proffered Justifications Are Pretextual.</u>

### a. Conserving Judicial Resources is not a Legitimate Justification to Dismiss this Action.

The Government argues that dismissal is appropriate to protect the Government's interest in conserving limited resources that would be expended in litigating this action. Conserving judicial resources is only a legitimate justification when the potential litigation burden is many times greater than the potential recovery. *See Swift v. United States*, 318 F.3d 250, 250 (D.C. Cir. 2003). Unlike the complaint in *Swift*, in this case, the Relator seeks billions and the Government

has failed to substantiate what, if any, burden Relator's claim would impose on the Government. Claims of undue burden and cost must be substantiated before they are credited by a court. *See Spendlove v. RapidCourt, LLC*, Civil Action No. 18-856, 2019 WL 7143664, at *4 (E.D. Va. Dec. 23, 2019). Here, the Government's claims of significant burden are speculative and unsupported by any evidence or an affidavit. Mot. at 11 ("In this case, the prosecution of the Relator's qui tam action would place a significant burden on the Government—not only in monitoring of the continued litigation, but in responding to discovery requests from the Relator and Credit Suisse."). In short, conserving executive resources is not a legitimate justification given the unique circumstances of this case and the Government's stated justification is pretextual. Moreover, an evidentiary hearing inquiring into potentially false statements and material omissions by DOJ and Credit Suisse during the plea and sentencing will not significantly burden the Government.

**b.** Relator's Claim Does Not Require Discovery into Privileged Information

The Government next argues that this case will require discovery into privileged matters for which the Government will maintain a claim of privilege or protection. Mot. at 12. This is not a legitimate justification to dismiss this case.

First, the basic facts that give rise to this FCA action are not in dispute. Credit Suisse and the DOJ prosecutors misled the District Court when they failed to alert the Court to the fact that employees at Credit Suisse continued to conspire with U.S. taxpayers to conceal accounts at the same time that the parties appeared on May 19, 2014 at a Plea Hearing before Judge Smith. Any discovery into Credit Suisse's representations to the Government in its plea negotiations are not privileged or classified. *Doe No. 1 v. United States*, 749 F.3d 999, 1008 (11th Cir. 2014) ("No privilege prevents the disclosure of plea negotiations."). This is not a fishing expedition, Relator knows exactly what information was provided to the Government before the Plea Agreement and

sentencing, and that information alone is sufficient for the Court to determine that the reduced criminal fine was fraudulently obtained.

Moreover, the Government has failed to provide any information about what potentially privileged documents will be implicated by this FCA case and has failed to meet its burden to establish that any likely discovery will be privileged. *In re Grand Jury Proceedings*, 33 F.3d 342, 352 (4th Cir. 1994) ("Initially, the party asserting a privilege bears a burden of establishing that privilege.").

Based on the reasons stated above, the Government's privilege considerations do not justify dismissing this action and are not a legitimate reason to dismiss this case.

> **c.** Relator Has Pled a Legitimate Reverse FCA Claim

The Government's third reason for dismissal is also pretextual.

The Government argues that Relator's FCA complaint should be dismissed because Relator is seeking restitution for unpaid tax. Gov. Mot. at 9 n.4. The Government's argument is incorrect. Credit Suisse pled guilty to a conspiracy under Title 18 of the United States Code—not a Title 26 offense. And the obligation that Relator asserts was reduced by Credit Suisse's false statements and material omissions was a criminal **fine** not a tax. The Credit Suisse Plea Agreement specifically included restitution for taxes owed to the Government and that restitution provision is not at issue in this litigation. *See* Ex. A, Plea Agreement at p. 3-4.

Next, DOJ argues that the Relator's claim has no legal merit because it is premised on the false assumption that a civil, FCA suit can be predicated on unassessed criminal fines. Mot. at 10. The Government's argument is based on just two out of Circuit cases that are distinguishable from the facts of this case. DOJ misconstrues Relator's case which is based on an assessed and adjudicated financial obligation—a criminal fine—in a contract that Credit Suisse decreased by virtue of deceiving the District Court into ordering a reduced criminal fine.

"The False Claims Act is intended to reach all types of fraud, without qualification, that might result in financial loss to the Government. The [Supreme] Court has consistently refused to accept a rigid, restrictive reading." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999) (quoting *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968)); *Cook Cty. v. United States ex rel Chandler*, 538 U.S. 119, 129 (2003) (The FCA was drafted "expansively … to reach all types of fraud without qualification, that might result in financial loss to the Government."). In other words, the FCA is to be "broadly construed" to reach any attempt to defraud the Government of its lawful funds. *Id.*

Reverse FCA claims are premised 31 U.S.C. § 3729(a)(1)(G), which provides that an entity is liable to the United States if it "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or ***knowingly and improperly avoids or decreases an obligation to pay*** or transmit money or property to the Government." (emphasis added). To state a reverse false claim under the FCA, a Relator must demonstrate that the defendant had an "obligation" to pay money or transmit property to the Government.

In 2009, Congress amended the FCA to clarify the definition of an "obligation" and "broaden[] the scope" of reverse false claims. *United States ex. Rel Customs Fraud Investigations, LLC v. Victaulic*, 839 F.3d 242, 253 (3d Cir. 2016). Prior to 2009, some courts held that there was no "obligation" to pay or transmit money to the Government if there was no fixed amount to be paid. Congress amended the FCA to overrule this line of cases. *Id.* The law now defines an obligation as an "established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." The Senate

Report regarding this amendment specifically noted that the definition of obligation now expressly includes "contingent non-fixed obligations that encompasses the spectrum of possibilities from the fixed amount debt obligation typically at issue at common law to the instance where there is a relationship between the Government and a person that results in the duty to pay the Government money, **whether or not the amount owed is yet fixed**." *Id.* (emphasis added). Further, under the FCA, there are no hard and fast rules when it comes to what constitutes an obligation: "whether an obligation exists depends entirely on what the relevant legal instrument—be it a contract, regulation, statute, or judicial order—requires a party to do." *United States ex rel Landis v. Tailwind Sports Corp.*, 160 F.Supp.3d 253, 272 (D.D.C. 2016).

In the Credit Suisse Plea Agreement and guilty plea, Credit Suisse acknowledged that it owed a debt to the Government based on its criminal misconduct. Where a party acknowledges it owes a debt (even if the amount of that debt is not yet set or is otherwise incorrect because of fraud), there is an obligation under the reverse false claims provision of the FCA. *See Am. Textile Mfrs. Inst. v. The Limited, Inc.*, 190 F.3d 729, 741 (6th Cir. 1999) ("obligation certainly includes those arising from acknowledgement of indebtedness, final judgments, and breach of Government contracts."); *Landis*, 160 F.Supp.3d at 272 (noting that reverse false claims liability is available as long as there is an acknowledgment of indebtedness). While Credit Suisse used fraud to "decrease" its criminal fine (*see* 31 U.S.C. § 3729(a)(1)(G)) the fact that the amount of the criminal fine was lower than it should have been does not defeat the fact that Credit Suisse admitted it owed financial obligations to the Government as a result of its admitted misconduct.

A plea agreement is a contract, and, as with any contract, the terms of the agreement are interpreted according to the parties' reasonable expectations. *United States v. Fields*, 763 F.3d 443, 453 (6th Cir. 2014); *Dowell v. United States*, 694 F.3d 898, 902 (7th Cir. 2012); *Meadows v. United*

*States*, 2019 WL 7041507, at *3 (W.D. Va. Dec. 20, 2019). The Plea Agreement at issue here was entered into pursuant to Fed. R. Crim. P. 11(c)(1)(C) which is only "binding on the court *after* the court accepts the agreement." *United States v. Kling*, 516 F.3d 702, 704 (8th Cir. 2008) (emphasis in original). In the Plea Agreement, Credit Suisse agreed that it owed a criminal fine under the guideline range of between $1,333,000,000 and $2,666,000,000. Ex. A at ¶¶ 4, 5, 7A. The final amount of the criminal fine had to be accepted by the District Court at sentencing. Through false statements and material omissions, Credit Suisse convinced the District Court to accept a criminal fine of $1,333,500,000—thereby avoiding over $1 billion. And the DOJ prosecutors failed "to furnish complete and accurate information at sentencing" so that the Judge Smith could evaluate the Plea Agreement and determine the appropriate criminal fine in the "exercise of sound judicial discretion." *See Edgell*, 914 F.3d at 287; *see also Block*, 660 F.2d at 1092 (standing "mute" in the face of "factual inaccuracies" or withholding relevant factual information "violates a prosecutor's duty to the court").

*Second*, the fact that further action by the Sentencing Court may be required to determine the full amount owed by Credit Suisse does not mean that an obligation is lacking in this case. DOJ's discretion is not at issue in this case. The discretion at issue in this case is whether the District Court—not DOJ—should unwind the Plea Agreement and seek a greater criminal fine. That is not the type of discretion that makes an obligation too speculative or contingent under the FCA. *See United States ex rel Simoneaux v. Dupont*, 843 F.3d 1033, 1039 (5th Cir. 2016) ("To be clear, the fact that further Governmental action is required to collect a fine or penalty does not standing alone, mean that a duty is not established."); *Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1204 (10th Cir. 2006) ("We acknowledge that there is some discretion in play here … Nevertheless, we are not convinced that this alleged discretion takes the obligation to pay the fees

outside the scope of § 3729(a)(7). Some discretion inheres in a wide variety of Government decisions."); *United States ex rel. Booker v. Pfizer*, 9 F.Supp.3d 34, 50 (D. Mass. 2014) (explaining that there is an obligation under the FCA when Government retains discretion "whether to enforce an existing obligation" but there is no obligation under the FCA when the Government retains discretion "whether to impose a penalty and thereby create an obligation."). Nor does that discretion indicate that there is no obligation.

The analysis regarding discretion depends on whether the defendant is merely in a regulatory relationship with the Government or whether it has a closer, contractual relationship. *See Ruscher v. Omnicare Inc.*, 2014 WL 4388726, at *5-6 (S.D. Tex. Sept. 5, 2014). Here, the Plea Agreement was a contract.

The Government's position that Relator has not stated cognizable obligation is entirely based on two out of Circuit cases that are highly distinguishable from the facts of this case. *United States ex rel Simoneaux v. Dupont*, 843 F.3d 1033, 1039 (5th Cir. 2016) and *United States ex rel. Kasowtiz Benson v. BASF Corp.*, 929 F.3d 721 (D.C. Cir. 2019) stand for the proposition that unassessed potential penalties for regulatory noncompliance do not constitute an obligation that gives rise to a viable FCA claim. *DuPont*, 843 F.3d at 1040; *Kasowitz*, 929 F.3d at 726. This case is distinguishable. In both cases cited by the Government, the regulatory fines at issue were unassessed and unadjudicated and the EPA had never initiated any proceeding to collect fines. Here, the Government initiated a proceeding, entered into a contract with Credit Suisse, and collected a portion of the amount due and owing under that contract (albeit a much smaller fine than Credit Suisse should have paid). The discretion at issue in *DuPont* and *Kasowitz* was whether to "create" obligations in the first place and because the obligations had not yet been created, there was no plausible FCA claim. Here, the Government, Credit Suisse, and the District Court have

created an obligation under the FCA—the discretion involved goes merely to the **amount** of that obligation which Credit Suisse was able to decrease by over $1 billion by misleading the Sentencing Court. The District Court had the ultimate discretion to determine the amount of the criminal fine.

Moreover, the Plea Agreement contains what is effectively a stipulated penalty in a contract (*i.e.*, the $1,333,000,000 to $2,666,000,000 guideline fine range) and is a cognizable FCA obligation for this reason. When stipulated penalties are contained in a settlement agreement with the United States, those stipulated penalties are obligations under the FCA even if a Governmental body retains some discretion to impose the contractual penalties. *United States ex rel. Boise v. Cephalon*, 2015 WL 4461793, at *1 (E.D. Pa. July 21, 2015) ("[T]he existence of a 'specific contract remedy' in the form of stipulated penalties was understood to create an obligation within the scope of the reverse false claims provisions because it creates a less contingent obligation to pay than other kinds of contractual obligations where enforcement requires formal litigation to final judgment."); *Ruscher*, 2014 WL 4388726, at *1 ("The contract gave [defendant] additional duties not required by statute, and authorized additional penalties in case of breach … This Court is convinced that the contract makes a difference and could ultimately provide the 'obligation' necessary for a Reverse False Claims Act claim.").

Here, the guideline fine range in the Plea Agreement includes the maximum fine that the parties determined was appropriate based on Credit Suisse's criminal conduct. The District Court was required to evaluate Credit Suisse's conduct (including the representations made by the DOJ prosecutors and Credit Suisse) to determine an appropriate criminal fine. The District Court—not DOJ prosecutors or Credit Suisse—had the ultimate discretion. The fact that the District Court

retained discretion to further impose additional criminal fines does not defeat the fact that Credit Suisse had an obligation under the law.

In summary, the DOJ's position that it must dismiss this case—a position based solely on two out of Circuit cases highly distinguishable from this case and a dubious prudential concern—rings hollow. This case, which could be worth nearly $3 billion after trebling, has legal merit and DOJ's reliance on a disputed legal issue to dismiss this case—rather than just declining to intervene—appears pretextual.

### III. Alternatively, After an Evidentiary Hearing the Court Can Hold the Motion to Dismiss in Abeyance, Stay this Civil Action, and Require DOJ to Provide Regular *Ex Parte* Status Reports.

Where a civil action and a criminal action are pending at the same time, a court has the inherent authority to stay the civil matter to protect the integrity of the criminal proceedings. *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970). Courts will often require the DOJ to report *ex parte* to the court overseeing the civil case to justify a continued stay. *See, e.g., In re Broiler Chicken Antitrust Lit.* Civil Action No. 16-cv-8637 (N.D. Ill. Sept. 20, 2019) (ECF No. 3093). Given the purported pending enforcement proceedings, a stay of this action could be appropriate.

### CONCLUSION

The Court should not dismiss this case. As private attorneys general, Relators play many important, and at times co-equal, roles in bringing and litigating false claims disputes. While the Government has provided some pretextual justifications for moving to dismiss this case, those justifications should be rejected especially where Relator has called into question DOJ's and Credit Suisse's candor to the Sentencing Court in 2014. The conduct by DOJ and Credit Suisse with respect to the Credit Suisse plea and sentencing is of such great concern that the United States Senate Committee on Finance has opened its own investigation and has issued letters to both DOJ and Credit Suisse. *See* *https://www.finance.senate.gov/chairmans-news/wyden-launches-*

*investigation-into-whether-credit-suisse-violated-plea-agreement* (last accessed November 17, 2021).

At the very least, if it is not inclined to deny the Government's motion on the papers, the Court should require the parties to appear for an evidentiary hearing where Relator will elicit further evidence to demonstrate that DOJ's decision to dismiss this case is unreasonable and not based on proper considerations.

Dated: November 18, 2021      Respectfully submitted,

/s/ Stuart A. Sears
**Stuart A. Sears**
Virginia Bar No. 71436
Attorney for Relator/Plaintiff
Schertler Onorato Mead & Sears, LLP
New York Avenue, N.W.
Suite 500 West
Washington, DC 20001
(202) 628-4199
(202) 628-4177 (FAX)
ssears@schertlerlaw.com

**Jeffrey A. Neiman**
Florida Bar No. 544469
**Jeffrey E. Marcus**
Florida Bar No. 310890
Attorney for Relator/Plaintiff
(*pro hac vice forthcoming*)
Marcus Neiman Rashbaum & Pineiro LLP
100 Southeast Third Avenue
Suite 805
Fort Lauderdale, FL 33394
Telephone: (954) 462-1200
jneiman@mnrlawfirm.com
jmarcus@mnrlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of November, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

Respectfully submitted,

/s/ Stuart A. Sears
**Stuart A. Sears**
Virginia Bar No. 71436
Attorney for Relator/Plaintiff
Schertler Onorato Mead & Sears, LLP
New York Avenue, N.W.
Suite 500 West
Washington, DC 20001
(202) 628-4199
(202) 628-4177 (FAX)
ssears@schertlerlaw.com