IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JOHN DOE, | ) ) ) |
| Plaintiff/Relator, | ) ) |
| v. | ) NO.: 21-cv-224-CMH-IDD ) |
| CREDIT SUISSE AG, | ) ) |
| Defendant. | ) ) |

REPLY IN SUPPORT OF THE UNITED STATES OF AMERICA'S
MOTION TO DISMISS

The United States, the real party in interest in this case, moved to dismiss this *qui tam* action over the Relator's objection under 31 U.S.C. § 3730(c)(2)(A) of the False Claims Act ("FCA"). Dkt. 20. After careful consideration of the facts and allegations raised in the Relator's *qui tam* Complaint, the United States concluded that the Relator's claims fail as a matter of law and that continued litigation of this matter by the Relator would interfere with other governmental priorities and intrude upon the Government's privileges. Under the FCA and a substantial body of case law interpreting it, the United States is entitled to considerable deference to decide which claims should be prosecuted on its behalf. This Court previously held that the United States "has 'an unfettered right to dismiss a qui tam' action." *United States ex rel. Davidheiser v. Capital Rail Constructors*, 433 F. Supp. 3d 899, 902 (E.D. Va. 2019) (Hilton, J.) (quoting *United States ex rel. Henneberger v. Ticom Geomatics, Inc.*, 427 F. Supp. 3d 701, 704 (E.D. Va. 2019) (Trenga, J.). Other courts have held that the United States' right to dismiss is limited only by the procedural requirements of Federal Rule of Civil Procedure 41 and "any applicable background constraints on executive conduct in general." *E.g.*, *United States ex rel.*

1

*CMZNHCA, LLC v. UCB, Inc.,* 970 F.3d 835, 838, 849 (7th Cir. 2020). The Ninth Circuit applies a standard that dismissal is appropriate where the United States articulates a rational basis for its dismissal decision. *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998). The United States has demonstrated that it meets any of the highly deferential standards for dismissal under § 3730(c)(2)(A).

In response to the United States' motion, the Relator fails to address the dismissal standard previously adopted and applied by this Court. Instead, Relator first seeks to have this court apply the Ninth's Circuit's alternative rational relation standard and then posits that the United States' motion must fail because its reasons for dismissal are pretextual. To support this assertion, the Relator makes weak attempts to minimize the burdens that this case would place on the United States should the litigation be allowed to continue and relies on an interpretation of the reverse false claims provision of the FCA with which the United States respectfully disagrees. Moreover, the Relator's opposition brief expands and recasts his allegations of fraudulent misrepresentations to include, not just misrepresentations by Defendant Credit Suisse AG ("Credit Suisse"), but as also misrepresentations *by the United States*—ostensibly to reduce the criminal penalty that Credit Suisse owed to the United States pursuant to a 2014 plea agreement. These new accusations bear no resemblance to the allegations the Relator pled in his *qui tam* Complaint, where he alleged a fraud perpetrated by Credit Suisse *upon the United States*. The new allegations are neither true nor a sufficient basis to grant the Relator an evidentiary hearing.

At bottom, the Relator seeks to inject himself into a criminal plea negotiation nearly seven years after the plea was accepted by the Court by using this civil *qui tam* action to substitute himself for the United States' criminal prosecutors and renegotiate the criminal fine.

The Relator has no standing to revise the 2014 criminal plea, and the FCA does not confer such standing. *Cf. United States v. Wegeler*, 941 F.3d 665, 672–74 (3d Cir. 2019); *United States v. Couch*, No. CR 15-0088-CG-B, 2017 WL 3016923, at *2 (S.D. Ala. July 14, 2017) ("The Supreme Court has made clear that 'a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution' and that criminal prosecutions have 'special status' in our legal system.") (internal citations omitted).

ARGUMENT

I. This Case Should be Dismissed Based on the United States' Decision to Exercise its Unfettered Right to Dismiss the Case.

The FCA provides that the United States may dismiss a *qui tam* action notwithstanding the objections of the relator. 31 U.S.C. § 3730(c)(2)(A). This Court has recognized that the United States' right to do so is "unfettered." *Davidheiser*, 433 F. Supp. 3d at 902 (relying on *Swift v. United States*, 318 F.3d 250, 252 (D.C. Cir. 2003). As this Court previously explained, the United States' unfettered right to dismiss under § 3730(c)(2)(A) is consistent with "the language of the [FCA] and the nature of *qui tam* actions," where "[t]he claims asserted by a relator are the claims of the United States." *Henneberger*, 427 F. Supp. 3d at 704. Because "the relator seeks to vindicate injury not to himself, but to the Government," the United States remains "the true party in interest," and thus "retains ultimate control over the action." *Davidheiser*, 433 F. Supp. 3d at 901. The unfettered dismissal standard applied by this Court is particularly appropriate where, as here, the United States seeks dismissal before the defendant answers the complaint or moves for summary judgment. *See Polansky v. Executive Health Res. Inc.*, No. 19-3810, ___ F.4d ___, 2021 WL 4999092, at *8–9 (3d Cir. Oct. 28, 2021); *CMZNHCA, LLC*, 970 F.3d at 838, 849. The Relator fails to provide a reason for the Court to depart from its prior holdings and the unfettered discretion standard applied by the D.C. Circuit

3

in *Swift*. Under this Court's precedent, the United States exercised its unfettered right to dismissal, so this case should be dismissed. *Davidheiser*, 433 F. Supp. 3d at 902.

    II.        Dismissal is Appropriate Under the Alternative Rational Relation Standard.

The Relator's opposition only addresses the United States' decision to dismiss this case based on the Ninth Circuit's rational relation standard. Under this highly deferential standard for dismissal, the United States need only identify a "valid government purpose" and "a rational relationship between dismissal and the accomplishment of that purpose." *Sequoia Orange*, 151 F.3d at 1145. "If the government satisfies this two-step test, the burden switches to the relator 'to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal.'" *Id.* (internal citation omitted). As discussed below and in the United States' motion, the United States satisfies the *Sequoia Orange* test, and the Relator fails to meet his own burden.

The United States' decision to exercise its authority to dismiss this case is based on three reasons: (1) the Relator fails to state a claim on which relief can be granted under the FCA; (2) continued litigation by the Relator will interfere with ongoing coordination pursuant to the plea agreement; and (3) continued litigation by the Relator will strain Government resources and intrude upon privileged or protected information. Dkt. 21 at 8–12. Courts have held that each of these reasons is rationally related to legitimate government interests and support dismissal under § 3730(c)(2)(A). *E.g.*, *United States ex rel. Wright v. AGIP Petroleum Co.*, No. 5:03-CV-264-DF, 2005 WL 8167952, at *6 (E.D. Tex. Feb. 3, 2005) (granting dismissal based on legally deficient reverse false claim action); *United States ex rel. Toomer v. TerraPower, LLC*, No. 4:16-cv-00226-DCN, 2018 WL 4934070, at *5 (D. Idaho Oct. 10, 2018) (dismissing *qui tam* where the Government alleged that litigation would consume agency resources and impair its ability to work with the defendant); *Sequoia Orange Co.*, 151 F.3d at 1146 ("[T]he government can

4

legitimately consider the burden imposed on the taxpayers by its litigation").

In his opposition, the Relator claims that the United States moved to dismiss the case based on improper considerations, and that the United States' reasons for dismissing the case are pretextual. To support these claims, the Relator raises a series of new, unsupported allegations that the United States engaged in the same misconduct that the Relator had earlier attributed to Credit Suisse alone. Specifically, the Relator declares, without support, that "Credit Suisse and the DOJ prosecutors misled the District Court" at Credit Suisse's plea hearing on May 19, 2014. Dkt. 27 at 10. The United States vigorously disputes the Relator's accusations of misconduct, but because refuting those accusations would infringe on privileged information relating to prosecutorial decision-making and protected and inadmissible plea negotiations under Rule 410 of the Federal Rules of Evidence and Criminal Rule of Procedure 11(f)—one reason why dismissal is appropriate here—the United States is constrained simply to note its disagreement with the Relator's accusations.

Setting aside the fact that the FCA is not the proper mechanism to address alleged misstatements by government prosecutors to the tribunal in a criminal case, the Relator waited seven years to raise these allegations, where he stated them for the first time only after the United States moved to dismiss his case. In fact, the Relator's new allegations *expressly contradict* his Complaint, where he alleges that the United States was a victim of fraud. *Compare, e.g.*, Dkt. 1 (Complaint) at 4–5, ¶¶ 14–17 (alleging that Credit Suisse misled the United States into assessing a lower penalty), *with* Dkt. 27 (Relator's Opposition) at 5–9 (alleging that the United States knew about the information and misled the Court). The Relator does not explain the obvious conflict between the allegations in the Complaint (that the United States was defrauded) and the accusations in his opposition (that the United States

5

committed fraud), even though the information he claims to support this conclusion was known to him at the time he filed the Complaint. *See* Dkt. 27 at 3–5.

The Relator's sudden change in position can only be explained by a desire to avoid dismissal by erroneously accusing the United States of "fraudulent, arbitrary and capricious, or illegal" conduct. *Sequoia Orange Co.*, 151 F.3d at 1145. The Court should not entertain the Relator's unfounded allegations and force this case to proceed. The Court should similarly reject the Relator's assertions that the United States' reasons for dismissal are pretextual.

  A.  The Relator's Legal Theory Remains Meritless.

As discussed in the United States' motion to dismiss, a reverse false claim under the FCA first requires an established obligation to pay the Government. *See* 31 U.S.C. § 3729(a)(1)(G); Dkt. 21 at 4–5. Although the obligation does not need to be "fixed" in amount, it must nevertheless be "established." *See, e.g.*, *Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d1033, 1037 (5th Cir. 2016) ("The most reasonable interpretation is that 'established' refers to whether there is *any* duty to pay, while 'fixed' refers to the *amount* of the duty.") (emphasis in original). In the context of fines or money penalties for noncompliance or breach, courts have held that an obligation is not "established" until there is a duty to pay. *See, e.g.*, *United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp., et al.*, 929 F.3d 721, 726 (D.C. Cir. 2019) (failure to report substantial risk information to government while participating in compliance audit program did not constitute a reverse false claim); *United States ex rel. Schneider v. JPMorgan Chase Bank, N.A., et al.*, 878 F.3d 309, 315 (D.C. Cir. 2017) (failing to disclose to a corporate monitor inappropriate residential mortgage practices, as required by the settlement agreement with federal and state regulators, "does not qualify as an 'obligation' under the [FCA]"); *United States ex rel. Booker v. Pfizer, Inc.*, 9 F. 3d 34, 50 (D. Mass. 2014) (failing to

6

report certain events in accordance with a corporate integrity agreement with the Department of Health and Human Services did not state a reverse false claim because "[t]he obligation to pay would only arise upon [the Government's] decision to assess the stipulated penalties. The discretion retained by the [Government] here is thus the discretion whether to *impose* a penalty and thereby *create* an obligation to pay, rather than the discretion whether to *enforce* an *existing* obligation to pay the government.") (emphasis in original); *Hoyte v. Am. Nat'l Red Cross*, 439 F.2d 38, 44 (D.D.C. 2006), *aff'd*, 518 F.3d 61 (D.D.C. 2008) (no obligation to pay fines for violation of Consent Decree until Government "decides to exercise its authority").

In this case, the Relator claims that Credit Suisse's "obligation" arises under the plea agreement. Dkt. 27 at 13–14. However, the only obligation *established* by the plea agreement is the obligation to pay the criminal fine that Credit Suisse has already paid, and the Relator does not offer facts to support a contrary view. The Relator asserts that, by merely referencing the sentencing guideline range, the plea agreement "contains what is effectively a stipulated penalty in a contract," and "those stipulated penalties are obligations under the FCA." Dkt. 27 at 16 (citing two unreported, out-of-circuit district court decisions). The Relator's assertion misapprehends Credit Suisse's plea agreement, as it contains no stipulated penalty provision and does not automatically impose an additional fine in the event of breach. *See United States v. Credit Suisse*, No. 1:14-cr-188 (E.D. Va.), Dkt. 13 at 11 (Plea Agreement) (noting that if Credit Suisse "fails to comply with any provision of this plea agreement . . . [Credit Suisse] will be subject to prosecution for any federal criminal violation" and that punishment "shall be determined by the Court in an appropriate proceeding"). Indeed, Credit Suisse could face an additional penalty *only if*: (1) the United States' criminal prosecutors determine that Credit Suisse violated the plea agreement, *id.* at 10; (2) criminal prosecutors decide to seek to enforce

7

the terms of the plea agreement against Credit Suisse, *id.* at 11; (3) the Court determines that Credit Suisse in fact breached the plea agreement, thereby subjecting Credit Suisse to further prosecution, *id.*; and (4) criminal prosecutors successfully pursue new, additional criminal charges against Credit Suisse.

Thus, the Relator has not shown that the plea agreement here establishes a required obligation to pay a penalty beyond the amount negotiated with prosecutors. The Relator's argument rests on the faulty and unsupported presumption that the qui tam statue authorizes a private citizen in a civil FCA case to act as the Attorney General in a criminal where the United States, through its prosecutors, have not. And even if the Court was persuaded by some of the Relator's arguments regarding the potential viability of a reverse false claim on these particular facts, the United States has still raised two additional and independent bases to support its dismissal decision.

      B.      The Relator Fails to Appreciate or Acknowledge the Ways in Which This *Qui Tam* Will Interfere with Ongoing Discussions with Credit Suisse.

The Relator does not rebut the United States' argument that permitting him to have a seat at the table in ongoing discussions between the United States and Credit Suisse, as envisioned by the plea agreement, may impair the effectiveness of those discussions. Dkt. 21 at 10–11. The impairment of these discussions is an independent basis for the United States to dismiss this action. *See Toomer*, 2018 WL 4934070, at *5. The Relator suggests that the Court could mitigate this harm by staying this case until the terms of the plea agreement expire. Dkt. 27 at 19. Until then, the Relator would have the Court require the United States to provide ongoing reports to the Court. *Id.* Importantly, the Relator presumes, without any authority, that his filing requires a new criminal investigation.

The Court should not allow the Relator to dictate the terms of its engagement with

8

Credit Suisse (the actual party to the plea agreement), *Wegeler*, 941 F.3d at 672–74, or impose additional burdens on the United States by requiring it to provide reports to the Court to justify the stay requested by the Relator.

  C.  The Relator Fails to Adequately Address How This *Qui Tam* Will Strain Government Resources or Intrude Upon Privileged and/or Protected Information.

Finally, the Relator fails to meaningfully address the burden that this case will impose on the Government. Instead, the Relator declares that this case is potentially worth a great deal of money, which, according to the Relator, precludes the United States from considering the expected burden imposed by the litigation. *See* Dkt. 27 at 9–10. The Relator cites the *Swift* decision for this proposition, but nothing in *Swift* or § 3730(c)(2)(A) precludes the United States from dismissing a case even if it has possible merit. Here, the Relator's claim that the case is "worth nearly $3 billion after trebling" misses the point. As explained above, the Relator has not alleged a viable reverse false claim. *See Polansky*, 2021 WL 4999092, at *12 (granting United States' motion to dismiss despite relator's assertion that the case was worth billions because "the prospect of success was doubtful."). Moreover, the constitutional due process requirements on which the *Sequoia Orange* standard is premised do not require a strictly quantitative analysis of costs and benefits of a potential case. To the contrary, the United States is permitted to forgo even those enforcement actions it knows would prove meritorious, given the agency's prerogative—and need—to balance agency priorities and choose which violations warrant use of its limited resources. *See Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985).

Here, the Relator has already sought irrelevant information from the United States, Dkt. 27-5 (Relator's letter to the United States demanding to know what the prosecutors relied on when negotiating the plea with Credit Suisse), so there is no dispute that the Relator will continue seeking discovery from the United States, imposing burdens on the United States. *See*

*Sequoia Orange Co.*, 151 F.3d at 1146; *United States ex rel. Nicholson v. Spigelman*, No. 10-cv-3361, 2011 WL 2683161, at *2 (N.D. Ill. July 8, 2011) (noting the likelihood that parties "would seek discovery from the government and the government's burden in monitoring the case and filing briefs on issues of law likely to arise in the suit" was a sufficient basis to grant the United States' motion to dismiss).

Courts, including those within the Fourth Circuit, have repeatedly held that when the United States is required to divert resources to monitoring cases, much less defend against written or deposition discovery, it has demonstrated sufficient grounds to dismiss. *See, e.g.*, *United States ex rel. Stovall v. Webster Univ.*, No. 3:15-v-03530-DCC, 2018 WL 3756888, at *3 (D.S.C. Aug. 8, 2018) (holding the United States' "interest in preserving scarce resources by avoiding the time and expense necessary to monitor t[he] action" was a valid Government purpose for dismissal); *United States ex rel. Nicholson v. Spigelman*, No. 10-cv-3361, 2011 WL 2683161, at *2 (N.D. Ill. July 8, 2011) (noting that the likelihood that parties "would seek discovery from the government and the government's burden in monitoring the case and filing briefs on issues of law likely to arise in the suit" was sufficient basis to grant Government's motion to dismiss); *cf. Sequoia Orange Co.*, 151 F.3d at 1146 (holding that "the government can legitimately consider the burden imposed on the taxpayers by its litigation"). Significantly, it is the *Government's* analysis that is entitled to deference in these situations, not a relator's. *See, e.g.*, *United States ex rel. Davis v. Hennepin County*, No. 18-cv-01551 (ECT/HB), 2019 WL 608848, at *7 (D. Minn. Feb. 13, 2019) (accepting the Government's analysis that the cost was likely greater than the benefit and dismissing FCA action without any sort of evidentiary hearing).

Monitoring the case and responding to discovery, however, is not the only way in which

10

continued litigation by the Relator interferes with government prerogatives. As discussed in the United States' motion to dismiss, continued litigation will likely intrude upon information over which the United States asserts privilege or protection, because the Relator's Complaint alleges that prosecutors would have recommended a higher criminal fine had Credit Suisse not misled them, and these allegations inherently and inevitably require discovery into the prosecutors' judgment and work product at the time of the plea. In an attempt to minimize this legitimate concern by the United States, the Relator now contends that he does not need any information about prosecutorial decision-making because the District Court, alone, was deceived. *See* Dkt. 27 at 10–11. These new contentions do not moot the United States' privilege concerns.

The Relator assumes that the United States based its plea deal solely on Credit Suisse's disclosure of a particular number of accounts, worth a particular amount of money, such that discovery of any additional accounts would inherently *require* the United States and the Court to recalculate the criminal fine. But the Relator had no role in the plea negotiations, so he cannot be unaware of what factors went into calculating Credit Suisse's criminal fine in the first instance. If the Relator were to proceed, the prosecutors' decision-making process during the plea negotiations would necessarily be the subject of discovery from the United States. Regardless of whether this information is requested by the Relator or by Credit Suisse, it is information over which the United States asserts privilege or protection. The very likelihood that its privilege or protected materials will be placed at issue is a sufficient basis for dismissal. *See, e.g.*, *Schwartz v. Raytheon Co., Long Beach*, 150 F. App'x 627, 628 (9th Cir. 2005) (affirming dismissal of *qui tam* where relator "fail[ed] to demonstrate that the parties can litigate this case without access to privileged and sensitive material").

III.  An Evidentiary Hearing is not Warranted.

The Relator asserts that he is entitled to an evidentiary hearing so that he may present evidence relating to "the underlying fraud on Judge Smith" who presided over Credit Suisse's 2014 criminal plea.  Dkt. 27 at 2.  An evidentiary hearing is neither required under § 3730(c)(2)(A) nor warranted here for the reasons set forth in the United States' Opposition to the Relator's Motion to Continue the hearing.  Dkt. 29.

## CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion to dismiss.

Dated:  November 24, 2021

    Respectfully submitted,

    BRIAN M. BOYNTON
    Acting Assistant Attorney General

    JESSICA D. ABER
    United States Attorney

By: /s/ William Hochul
    WILLIAM HOCHUL III
    GERARD MENE
    Assistant United States Attorneys
    Counsel for the United States
    2100 Jamieson Ave.
    Alexandria, Virginia 22314
    Tel:   (703) 203-7122
           (703) 299-3777
    Fax:  (703) 299-3898
    Email: William.Hochul2@usdoj.gov
           Gerard.Mene@usdoj.gov

By: /s/ David W. Tyler
    JAMIE ANN YAVELBERG
    ALLISON CENDALI
    DAVID W. TYLER
    Attorneys, Civil Division
    Commercial Litigation Branch
    U.S. Department of Justice

                    Counsel for the United States
                    P.O. Box 261, Ben Franklin Station
                    Washington, D.C. 20044
                    Tel: (202) 305-3988
                    Fax: (202) 514-7361
                    David.W.Tyler2@usdoj.gov