IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *EX REL.* JOHN DOE, | ) ) | |
| Plaintiff/Relator, | ) ) | |
| v. | ) ) | 21-cv-00224 |
| CREDIT SUISSE AG, | ) ) | |
| Defendant. | ) | |

### ORDER

THIS MATTER comes before the Court on the United States of America's Motion to Dismiss pursuant to the dismissal provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730(c)(2)(A).

On May 19, 2014, Credit Suisse pleaded guilty to one count of conspiracy to commit offenses against the United States through aiding, assisting, procuring, counseling, and advising the preparation and presentation of false income tax returns to the Internal Revenue Service ("IRS"). The United States District Court for the Eastern District of Virginia entered the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

For several decades, Credit Suisse operated an illegal cross-border banking business through which it knowingly and willfully aided and assisted thousands of U.S. clients in

1

opening and maintaining undeclared accounts and concealing offshore assets and income from the IRS. An estimated 22,000 Credit Suisse accounts owned by U.S. citizens fell within the illegal cross-border scheme. The plea agreement required Credit Suisse to make an ongoing effort to identify U.S. accounts that were part of the criminal scheme. As part of a global resolution that included the plea agreement, Credit Suisse agreed to pay $2.6 billion to federal and state agencies.

John Doe, the Relator, is a former employee of Credit Suisse, where the Relator last worked in 2010. The Relator alleges that during plea negotiations with the Government, Credit Suisse was required, before the plea, to disclose to prosecutors a complete and accurate list of every specific account at the bank held by U.S. citizens, but that Credit Suisse knowingly failed to make those disclosures to obtain a plea agreement with more favorable monetary terms. Relator further alleges that, after the plea agreement was executed by the parties and entered by the District Court, Credit Suisse willfully failed to inform prosecutors of other accounts in violation of the plea agreement's cooperation requirements. According to the Relator's Complaint, those alleged non-disclosures decreased Credit Suisse's obligation to pay additional penalties to the United States and are therefore

actionable under the FCA's reverse false claims provision, 31 U.S.C. § 3729(a)(1)(G).

On February 26, 2021, the Relator filed the *qui tam* complaint under seal. The Government declined to intervene pursuant to 31 U.S.C. § 3730(b)(4)(B) of the FCA. When the Government declines to intervene in a *qui tam* case, the case is unsealed, and the relator is permitted by statute to continue with the action on behalf of the United States. *See* 31 U.S.C. § 3730(b)(4)(B); *ACLU v. Holder*, 673 F.3d 245, 249-50 (4th Cir. 2011). The statute also permits the United States to dismiss a *qui tam* action "notwithstanding the objections of the [relator]" if the relator receives notice of the motion and an opportunity to be heard. 31 U.S.C. § 3730(c)(2)(A). The United States seeks to dismiss the *qui tam* complaint under 31 U.S.C. § 3730(c)(2)(A) because the United States has concluded that the Relator's allegations fail to state a claim cognizable under the FCA, and that continued litigation of this action would impair ongoing activity related to Credit Suisse's obligations under the plea agreement, strain Government resources, and intrude upon the Government's privileged or protected information.

To establish a violation of the reverse false claim section of the FCA, the Relator must allege that the defendant improperly avoided an obligation to pay the Government. In other words, the Relator must identify "an established duty" arising

3

from a statute, regulation, contract, or other relationship to "pay or transmit money . . . to the Government." *See* 31 U.S.C. § 3729(b)(3). In this case, the Relator has identified no required obligation for Credit Suisse to pay a penalty to the Government for a violation of the law. The Relator's argument is based on the speculative assumption that if Credit Suisse had disclosed additional illegal accounts, federal prosecutors likely would have pursued a higher negotiated criminal penalty than what is reflected in the plea agreement. These speculative allegations fail as a matter of law under the FCA. An unassessed potential penalty does not qualify as an "established obligation" to pay that can give rise to a reverse false claim. For liability to attach, there must be an established duty to pay money and, in the enforcement context, where the Government has not assessed penalties, there is no such duty. *See, e.g., Simoneaux*, 843 F.3d at 1040 (contrasting unassessed penalties with customs duties and noting that "the customs law imposes a duty to pay"); *BASF Corp.*, 929 F.3d at 726 (obligation to pay penalty "arises only if and when the [Government] decides to impose a penalty").

The Relator's case threatens to interfere with ongoing discussions with Credit Suisse regarding the identification and remediation of remaining Swiss accounts held by U.S. citizens. Civil litigation by the Relator, ostensibly on behalf of the United States and in parallel with the ongoing implementation of

4

the plea agreement, would threaten the Department of Justice's ability to continue working with Credit Suisse in pursuit of uniquely governmental and federal interests. This is sufficient reason to dismiss. *See Toomer*, 2018 WL 4934070, at *5 (dismissing *qui tam* where the Government alleged that litigation would consume agency resources and impair its ability to work with the defendant).

Further, the prosecution of the Relator's *qui tam* action would place a significant burden on Government resources. Courts have routinely held that preservation of Government resources is a valid purpose for dismissing a *qui tam* action. *See, e.g., Sequoia Orange*, 151 F.3d at 1146 (holding that the district court "properly noted that the government can legitimately consider the burden imposed by taxpayers by its litigation, and that, even if the relators were to litigate the FCA claims, the government would continue to incur enormous internal staff costs"); *United States ex rel. Stovall v. Webster Univ.*, No. 3:15-v-03530-DCC, 2018 WL 3756888, at *3 (D.S.C. Aug. 8, 2018) (holding that the Government's "interest in preserving scarce resources by avoiding the time and expense necessary to monitor t[he] action" was a valid Government purpose for dismissal).

For the foregoing reasons, the United States and this Court find this *qui tam* action warrants dismissal. It is hereby

5

ORDERED that the United States of America's Motion to Dismiss is GRANTED.

*[signature]*
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
December 17, 2021